Hannah Sullivan, as Receiver, etc., of the Estate of Timothy D. Sullivan, Deceased, Appellant, *v.* Mount Carmel Cemetery Association, Respondent.

Second Department, June 25, 1926.

Cemeteries — action at law on certificates of indebtedness — certificates provided that defendant would apply at least fifty per cent of amounts received from sale of lots — Membership Corporations Law, §§ 70 and 74, construed and applied — fixing definite due date in certificate does not necessarily authorize holder to procure money judgment — payment of certificates was limited to receipts from lots — action should be brought in equity to adjust rights of all holders of certificates — judgment on pleadings in favor of plaintiff properly denied.

Certificates of indebtedness of a cemetery association, which provide for the application of at least fifty per cent of the proceeds of the sale and use of lots to the payment thereof, are, under the terms of the certificates and sections 70 and 74 of the Membership Corporations Law, limited to payment from the proceeds of the lots, and the fact that the certificates fix a definite due date does not authorize the holders to sue in an action at law and procure a money judgment against the cemetery association after the due date has arrived.

An action should be brought in equity to adjust the rights of the several holders of certificates of indebtedness and, therefore, the court properly denied plaintiff's motion for judgment on the pleadings in this action to recover the balance due on two certificates of indebtedness.

APPEAL by the plaintiff, Hannah Sullivan, as receiver, from an order of the Supreme Court, made at the Kings Special Term and entered in the office of the clerk of the county of Queens on the 20th day of April, 1926, denying plaintiff's motion for judgment on the pleadings.

*Abraham Benedict* [*Gustavus A. Rogers* and *Edith H. Kunen* with him on the brief], for the appellant.

*Clinton T. Roe,* for the respondent.

KAPPER, J.   Plaintiff is the holder of two land purchase certificates of the defendant, a cemetery corporation, aggregating the sum of $499,400. The complaint sets forth two causes of action upon said two certificates respectively, alleging in the first cause of action that on October 16, 1918, the defendant issued to the plaintiff who thereupon became and still is the owner, holder and payee of a certificate of indebtedness in the sum of $200,000, upon which $69,500 was paid on account, and judgment is demanded for the difference of $130,500 as a balance due. The second cause of action alleges that on November 26, 1924, the defendant issued to the plaintiff another like certificate of indebtedness for the sum of $299,400, of which the defendant has paid on account $104,041.50, leaving a balance due plaintiff of $195,358.50. A money judgment is demanded for said aggregate balances. The certificates of indebtedness sued upon are annexed to the complaint. Except for the amount for which they were issued, they are alike in tenor. It will suffice to an understanding of the case to set forth but one of them, viz.:

" Number 393                          Amount $200,000
" CERTIFICATE OF INDEBTEDNESS
" of the
" MOUNT CARMEL CEMETERY ASSOCIATION
" Incorporated under the Laws of the State of
" New York

" This is to Certify that the Mount Carmel Cemetery Association, a corporation duly organized under and by virtue of the Laws of the State of New York, is indebted to Hannah Sullivan, as Receiver of the Estate of Timothy D. Sullivan, deceased, or assigns, in the sum of Two Hundred Thousand 00/100 Dollars, for value received, which sum the said Mount Carmel Cemetery Association hereby promises to pay on the first Monday in June, in the year nineteen hundred and twenty-five, at its office in the City of New York, on the presentation and surrender of this Certificate.

" This Certificate is one of a series of Certificates amounting

in the aggregate to Three Million, one hundred and fifty-six thousand, eight hundred ($3,156,800) Dollars, all of like tenor and effect. The Mount Carmel Cemetery Association shall and will apply at least one-half or fifty (50%) per cent of the proceeds of the sale and use of lots and plots semi-annually, or oftener at the option of the said Mount Carmel Cemetery Association, to the payment *pro rata* of all outstanding Certificates of Indebtedness, aggregating said amount of Three Million, one hundred and fifty-six thousand, eight hundred ($3,156,800) Dollars, until the whole amount of said indebtedness is paid; the unpaid balance of this Certificate of Indebtedness to be paid on the said first Monday of June, 1925, at the office of said Mount Carmel Cemetery Association, in the City of New York.

" The said Mount Carmel Cemetery Association may apply as much more than one-half, or fifty per cent of the proceeds of the sale and use of its lots and plots to the payment of its Certificates of Indebtedness as it may deem advisable and proper after the payment of the incidental expenses and liabilities of the said Mount Carmel Cemetery Association, and the amount necessary for the preservation, improvement and embellishment of the Cemetery grounds and the avenues and roads leading thereto.

" This Certificate of Indebtedness is transferable only on the books of the Mount Carmel Cemetery Association in person or by Attorney on surrender of this Certificate.

" This Certificate shall not become obligatory until it shall have been authenticated by the signature of the Registrar selected by the Mount Carmel Cemetery Association.

" *In Witness Whereof,* the said Mount Carmel Cemetery Association has caused this Certificate of Indebtedness to be signed by its President and its Secretary, and its corporate seal to be hereto affixed at the City of New York on this 16th day of October A. D. 1918.

　　　　" MOUNT CARMEL CEMETERY ASSOCIATION
　　　　　　　　　　" By BEN BLUMENTHAL,
　　　　　　　　　　　　　　　　" *President.*
" [CORPORATE SEAL]　　　　　　　MAURICE B. BLUMENTHAL,
　　　　　　　　　　　　　　　　" *Secretary.*
" (Endorsements): Oct. 21, 1918   Empire Trust Company Registrar.   By Ass't Secretary.
　　　　　　　　　　" NOTICE
" The principal of the indebtedness hereof has been reduced by the payments heretofore made thereon on behalf of the Association, by Windsor Trust Co. and Empire Trust Co. as is evidenced on the back hereof."

The defendant's answer does not deny the issuance of the certificates and the indebtedness, but sets up as a separate defense that on or about May 26, 1905, the defendant purchased and acquired for cemetery purposes from the Fresh Pond Realty Company certain real property in payment for which it issued to said realty company a land purchase certificate obligating itself to pay to said realty company the sum of $3,156,800 on the first Monday in June, 1925, by applying at least fifty per cent of the proceeds that should be derived from the sale of said premises as cemetery lands; that thereafter said certificate was subdivided and different certificates issued in lieu thereof in various amounts, such subdivided certificates being now held by various persons of whom the plaintiff is one, and that the obligations or indebtedness represented by such subdivided certificates are for the unpaid balance of the purchase price agreed to be paid to said realty company for the purpose of acquisition of said premises so acquired and used for cemetery purposes; that from time to time there has been paid on account of such indebtedness and on account of the certificates representing the same various amounts from the proceeds received from the sale of said cemetery lands to the extent of more than fifty per cent; and that in so far as defendant undertook and obligated itself to pay the amount of such land purchase indebtedness at and upon a definite fixed date, the defendant and its officers and directors acted in contravention of law and, to that extent, their action " was and is *ultra vires* and void."

Like actions have been brought by other certificate holders and are now pending. Motions were also made by the defendant in this and other similar actions to consolidate the actions. These motions were granted, but the motion of this plaintiff, and other plaintiffs bringing like actions, for judgment on the pleadings was denied by the Special Term. In the light of the statute, and the language of the certificates, I am of the opinion that this action may not be maintained in its present form. Sections 70 and 74 of article 4 of the Membership Corporations Law, applicable to cemetery corporations (Laws of 1909, chap. 40), are invoked by all parties as determinative of the appeal. These sections were formerly numbered 50 and 54 of the Membership Corporations Law of 1895, and were the statutes in force when the defendant issued its single certificate to the Fresh Pond Realty Company. As the former and present statutes are for all practical purposes identical, it is immaterial whether the earlier or later statutes are considered. The statutes should here be quoted:

" § 70. Application of proceeds of sales of lots. At least one-half of the proceeds of the sales of the use of all lots and plats shall

be applied to the payment of the purchase-money of the real property acquired by the corporation until such purchase-money is paid, and the residue thereof shall be applied to preserving, improving and embellishing the cemetery grounds and the avenues and roads leading thereto, and to defraying the incidental expenses and liabilities of the corporation.  After the payment of such purchase-money, and the expense of surveying and laying out the cemetery, the proceeds of all sales of the use of lots and plats thereafter shall be applied only to the improvement, preservation and embellishment of such cemetery and the incidental expenses of the corporation.  Such corporation may agree with a person from whom any lands are purchased for a cemetery, to pay therefor a specified share not exceeding one-half of the proceeds of all sales of the use of lots and plats made from such land, and such share shall be first applied to the payment of such purchase-money, and the residue thereof shall be applied to the preservation, improvement and embellishment of the cemetery, and the incidental expenses of the corporation.  Where lands have been so purchased, and are to be paid for as provided by this section, the prices of the use of lots and plats fixed by the directors and in force when such purchase was made, shall not be changed, while the purchase-price remains unpaid, without the written consent of a majority in interest of the persons from whom the lands were purchased, their heirs, representatives or assigns."

" § 74. Certificates of indebtedness.  If a cemetery corporation be indebted for lands purchased for cemetery purposes, or for services rendered or materials furnished in preserving or improving its cemetery, the directors thereof, by the concurring vote of a majority of their whole number, may, with the consent of the creditor to whom any such indebtedness is owing, issue certificates under the corporate seal, signed by the president and secretary, for the amount of such indebtedness, or a part thereof, payable at such times and drawing such a rate of interest and in such sums as may be agreed on with such creditor; but the amount of any certificate shall not be less than one hundred dollars, nor the rate of interest higher than the rate authorized by law.  The certificate shall be transferable by delivery, unless otherwise provided on the face thereof; and the directors shall keep in the books of the corporation an exact and true account of the number and amount of such certificates, the persons to whom issued, the time of maturity and the rate of interest.  A separate account shall be kept in the books of the corporation of the certificates issued for the purchase-money of lands, and the certificates issued for debts incurred in preserving and improving the cemetery.  The directors

shall set aside from the proceeds of sales of the use of lots and plats, such sums as they may deem necessary to pay said certificates at their maturity. Until such certificates are paid each holder thereof shall be entitled at all meetings of the corporation, to one vote for each one hundred dollars of such indebtedness held by him. The certificates issued pursuant to this section shall not be a lien upon any lot belonging to a lot owner."

To understand the force of the sections it is necessary to ascertain the obligation assumed by the defendant by the terms of the certificate under the statute. (*Thacher* v. *H. C. Association*, 126 N. Y. 507, 513.) The language of the certificate, as I read it, contains an express limitation upon the obligation to pay by making payment dependent upon the sale of lots and plots and contemplates not a payment of each single outstanding certificate when presented but the " payment *pro rata* of all outstanding Certificates of Indebtedness, aggregating said amount of Three Million, one hundred and fifty-six thousand, eight hundred ($3,156,800) Dollars, until the whole amount of said indebtedness is paid." True, there is added to this a fixed date, namely, the first Monday of June, 1925, for the payment of the unpaid balance, but I do not think that fixation of date increases the obligation so that the source of the payment can be ignored. " That was not a general obligation to pay the certificate, but to pay it only out of the proceeds of the moneys received from the sales of lots. If it never received any money from the sales of lots it could not be compelled to pay any upon the certificates. If it did not receive money enough from that source to pay all the certificates it could be required only to apply such money as it received." (*Thacher* v. *H. C. Association, supra,* 513.)

Notwithstanding the learned Special Term justice denied the plaintiff's motion for judgment upon the ground that all certificate holders were united in interest and that their respective actions should be consolidated, he nevertheless entertained the view that section 74 (*supra*) authorized the cemetery corporation to obligate itself to pay " any unpaid balance on a day certain " and that, therefore, the plaintiff's claim became an obligation of the defendant to pay such unpaid balance on the first Monday of June, 1925. This may well be true, but would it give authority to the holder of a certificate to obtain a money judgment against the cemetery corporation irrespective of whether it had sold cemetery lands for cemetery purposes to an amount beyond that which it had already devoted to the purposes required by the statute. Moreover, I think a reading of section 74 (*supra*) did not contemplate an obligation upon the part of the cemetery corporation to pay unpaid

balances due upon such certificates where it had not sold lands from which such payment could be made nor where it did not have in its treasury any sum that could be applied to such purpose. The limitation seems to me to be clearly stated in the statute (§ 74): "The directors shall set aside from the proceeds of sales of the use of lots and plats, such sums as they may deem necessary to pay said certificates at their maturity."

This language evidences to my mind a legislative purpose to limit the payment of unpaid balances upon such certificates to proceeds derived from the sales of cemetery lands for cemetery purposes.

In so far as concerns the matter now before us the status of cemetery corporations has been defined by the Court of Appeals (*Am. Exch. Nat. Bank* v. *Woodlawn Cemetery*, 194 N. Y. 116, 122) as follows: "This defendant, in no sense, occupies, or can occupy, the position towards the commercial community, which a railroad, or any other corporate body organized for purposes of commercial dealings, may. It is a membership corporation; which is to say, it is not a stock corporation, nor one organized for pecuniary profit, but is one for the more effective accomplishment of some object of mutual interest: in this case, the purchasing of property as a place for the burial of the dead, for the use of a number of individuals, or of their grantees, and the securing of a permanent management, through the instrumentality of trustees of their own appointment."

It was observed in the *Thacher Case* (*supra*, 513) that in an action on such a certificate it could not be said that an action in equity was absolutely necessary, but that "there might be circumstances and complications which would render such an action necessary." I think a situation is presented here which requires the plaintiff to sue in equity, or, if she be not so minded, to forego the maintenance of an action at law. All the appeals in the cases of a number (if not all) of the certificate holders were argued and submitted simultaneously with this appeal. We are, therefore, fully apprised of the multifarious interests of a number of claimants against this cemetery corporation. Shall one take precedence over the other in any surplus funds that the defendant may have in its treasury? Should it not first be shown that the defendant has not devoted all of the proceeds of the sale of lots to the partial discharge of these obligations and its further statutory obligations respecting the improvement, preservation and embellishment of the cemetery and the corporation's incidental expenses? Is not an accounting an essential method of relief? Again, are there lands that may properly be said not to be devoted to cemetery purposes

and are, therefore, available to the satisfaction of a money judgment? These considerations, and others that might suggest themselves, impel me to the view that, in the circumstances, the plaintiff should proceed in equity where all rights and interests may equitably and justly be determined. It was said in *Tyndall* v. *Pinelawn Cemetery* (198 N. Y. 217, 219): " We think that an action in equity can be maintained, if for no other reason, because the certificate is a lien on the ' land purchase fund ' and whether the defendant is trustee or agent it was handling the money of the plaintiff, and an accounting under the circumstances disclosed is a proper remedy." Not only do I think an action in equity can be maintained but that it should be maintained if the plaintiff presses for immediate relief.

I advise that the order denying plaintiff's motion for judgment on the pleadings be affirmed, with ten dollars costs and disbursements.

KELLY, P. J., RICH, MANNING and LAZANSKY, JJ., concur.

Order denying plaintiff's motion for judgment on the pleadings affirmed, with ten dollars costs and disbursements.